## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

KELLY J. DITSWORTH,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. C12-3100-LTS

**MEMORANDUM OPINION
AND ORDER**

_____

     Plaintiff Kelly J. Ditsworth seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for Social Security Disability Insurance benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Ditsworth contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she is not disabled. For the reasons that follow, I find that the decision must be affirmed.

### *Background*

     Ditsworth was born in 1970. AR 161. She completed high school and has past relevant work as a certified nurse's aide. AR 32, 57, 308. She protectively filed applications for SSI and DIB on November 13, 2009, and alleged a disability onset date of February 11, 2008. AR 8. Both applications were denied initially and on reconsideration. *Id.* She then requested a hearing, which was conducted September

14, 2011, by Administrative Law Judge (ALJ) Jeffrey Marvel. *Id.* Ditsworth testified during the hearing, as did a vocational expert (VE). AR 29-62.

The ALJ issued a decision denying Ditsworth's applications on October 6, 2011. AR 8-20. On October 24, 2012, the Appeals Council denied Ditsworth's request for review. AR 1-3. As such, the ALJ's decision is the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. §§ 404.981, 416.1481.

On December 21, 2012, Ditsworth commenced an action in this court seeking review of the ALJ's decision. On February 12, 2013, with the parties' consent, United States District Judge Mark W. Bennett transferred the case to me. The parties have briefed the issues and the matter is now fully submitted.


## *Disability Determinations and the Burden of Proof*

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's

2

work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R.

3

§§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also

4

that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## Summary of ALJ's Decision

The ALJ made the following findings:

(1)     The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

(2)     The claimant has not engaged in substantial gainful activity since February 11, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3)     The claimant has the following severe impairments: osteoarthritis of the right ankle status-post fracture and fusion; history of vulvar cancer status-post chemotherapy and radiation; major depression, recurrent; and obesity (20 CFR 404.1520(c) and 416.920(c)).

(4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5)     After careful consideration of the entire record, the undersigned finds that the claimant has the residual

5

functional capacity to perform sedentary work, as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant can lift twenty pounds occasionally and ten pounds frequently; stand and walk two hours out of an eight-hour workday; and sit for six hours in an eight-hour workday. The claimant is only able to walk for fifteen minutes at a time and then must rest for two to three minutes. The claimant is only able to occasionally balance, stoop, kneel, crouch, crawl, and climb, and is never able to climb ladders, ropes or scaffolding. The claimant is limited to working at no more than a regular pace.

(6)     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7)     The claimant was born on August 24, 1970 and was 37 years old, which is defined as a younger individual 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8)     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from February 11, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

6

AR 10-20.

At Step Two, the ALJ found that all of Ditsworth's impairments (osteoarthritis of the right ankle status-post fracture and fusion; history of vulvar cancer status-post chemotherapy and radiation; major depression, recurrent; and obesity) were "severe" within the meaning of the Commissioner's regulations, as they are established by medical evidence and impose significant limitations on her ability to perform basic work activities.   AR 10.   At Step Three, the ALJ found that none of Ditsworth's impairments, either alone or in combination with any other impairments, met or medically equaled any listed impairment.   AR 11-13.   He conducted a thorough analysis of Listings 1.02 (major dysfunction of a joint), 12.04 (mental impairments) and 13.23 (cancer of the vulva).   *Id.*   Ditsworth does not challenge the ALJ's finding that her impairments do not meet or medically equal a listed impairment.

At Step Four, the ALJ undertook an RFC assessment.   He found that Ditsworth can perform sedentary work[1] except that she can (a) lift twenty pounds occasionally and ten pounds frequently, (b) stand and walk two hours out of an eight-hour workday, (c) sit for six hours in an eight-hour workday, (d) walk for fifteen minutes at a time and then must rest for two to three minutes, (e) occasionally balance, stoop, kneel, crouch, crawl and climb and (f) never climb ladders, ropes or scaffolding.   AR 13.   He also found that she is limited to working at no more than a regular pace.   *Id.*   In making this finding, the ALJ first described Ditsworth's own allegations as to the nature and effects of her symptoms.

---

[1] The Commissioner's regulations state:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.   Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.   Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

*See* 20 CFR §§ 404.1567(b) and 416.967(b)

AR 14.  He noted that Ditsworth claimed to be unable to work due to her ankle impairment, complex regional pain syndrome, depression and anxiety, along with the residual effects of chemotherapy and radiation treatment.  *Id.*  After describing her specific claims concerning her symptoms, the ALJ found that her statements were not credible to the extent that they were inconsistent with his RFC determination.  *Id.*

The ALJ provided several reasons for his credibility assessment.  First, he summarized the evidence of treatment she received after suffering an ankle injury in February 2008, noting that she was originally diagnosed with a sprain but was later found to have fractured the posterior aspect of her tibia, causing degenerative changes in her ankle.  *Id.*  He further noted that she eventually underwent fusion surgery and that after a healing period she was able to ambulate without the use of assistive devices.  AR 14-15.

The ALJ next stated that Ditsworth made seemingly-inconsistent reports of pain to her health care providers.  AR 15.  For example, she was evaluated at the Mayo Clinic in August 2008 – six months after her injury – and was found to have no pain or swelling in her ankle.  AR 317.  She reported that she wanted "to get back to work."  *Id.*  The examining physician, Dr. N.S. Turner, noted that her ankle pain had "completely resolved" but recommended physical therapy to help her regain range of motion.  AR 317-18.  Three days later, however, Ditsworth told her regular physician, Dr. Harry Miller, that she was suffering from "continued pain."  AR 326, 404.

The ALJ also found that Ditsworth's use of pain medication has not been consistent with constant, disabling pain.  AR 15.  He summarized medical records indicating that she sometimes turned down prescription medication and expressed an intention to use only over-the-counter medications.  *Id.*  He also referenced Ditsworth's testimony during the hearing that she was not taking medication for ankle pain.  *Id.*

Next, the ALJ found that Ditsworth's work history, and her testimony about that history, did not support her allegation of disability.  *Id.*  While claiming an onset date of

8

February 11, 2008, she returned to work as a nurse's aide for about six weeks in March and April of 2008. *Id.* She then worked at another full-time job, as a corn sorter, in 2009. *Id.* When answering the ALJ's questions during the hearing, she stated that she had not worked since that time. AR 32-33. However, in answering her attorney's questions, Ditsworth acknowledged that she had been working at her father's used car lot for the previous six months, eight hours a day for three days a week. AR 51-54. She stated that she was not paid for her work and that it involved answering the phone and greeting customers. AR 53-54. The ALJ found that even if Ditsworth did not intend to mislead him with her initial testimony, her inconsistencies cast doubt on the reliability of the information she provided. AR 15.

Moreover, the ALJ noted that Ditsworth applied for numerous jobs after her alleged onset date that would have required a great deal of standing and walking. AR 16. Finally, he noted that her activities of daily living, which included caring for her young daughter along with cleaning, laundry and vacuuming, were inconsistent with Ditsworth's claim of disabling impairments. *Id.* Based on these findings, the ALJ discredited Ditsworth's subjective allegations to the extent they were inconsistent with his RFC determination. *Id.*

The ALJ next discussed the medical opinion evidence. He noted that three different state agency medical consultants reviewed Ditsworth's records and reached similar conclusions that she could perform a reduced range of light work. *Id.* He indicated that he was giving "some weight" to those opinions, but that he found the opinions of Ditsworth's own physician, Dr. J. Chris Coetzee, to be more convincing. *Id.* In August 2010, Dr. Coetzee completed a questionnaire indicting that Ditsworth could perform sedentary work for 30-40 hours per week so long as she could limit her walking to 15 minutes at a time. AR 589. The ALJ found that this opinion was entitled to

9

controlling weight, as it represented the medical opinion of a treating physician and was consistent with the substantial evidence of record.   AR 16.

The ALJ noted that another treating physician, Dr. Stephen Bertheleson, stated in March 2010 that Ditsworth could perform a "sitting job" but for "her level of education and training." *Id.* He found that this opinion was not entitled to weight because it was not a medical opinion but, instead, an opinion about disability that is reserved for the Social Security Administration. *Id.*

The ALJ next discussed evidence concerning Ditsworth's treatment for vulvar cancer. AR 17.   He noted that she was diagnosed in September 2010 and underwent chemotherapy and radiation from November 2010 through January 2011. *Id.* He further indicated that the records show the treatment was successful and Ditsworth has not had a recurrence. *Id.* However, he stated that the records reflect some ongoing effects of radiation-induced menopause, such as fatigue and hot flashes. *Id.* As such, the ALJ included some limitations in the RFC to accommodate those restrictions, as well as restrictions imposed by Ditsworth's obesity. *Id.*

With regard to Ditsworth's mental impairment of depression, the ALJ pointed out that she has never required extensive mental health treatment and had never been treated by a psychiatrist, psychologist or therapist. *Id.* Indeed, a nurse practitioner associated with Ditsworth's primary care physician noted that she did not want psychiatric care.   AR 686.   The ALJ determined that Ditsworth's failure to seek psychiatric care indicated that her depression was not as severe as alleged.   AR 17.

The ALJ did note that Ditsworth was examined and evaluated by both a consultative examiner, Dr. William Morton, and (at her attorney's request) a nurse practitioner. *Id.* Dr. Morton examined Ditsworth on January 12, 2010, and diagnosed adjustment disorder with depressed mood.   AR 440.   He found that Ditsworth had mild limitations regarding her ability to remember and understand instructions, procedures and locations, along with

mild limitations in her ability to carry out instructions. *Id.* He also found minimal limitations in regard to maintaining attention, concentration and pace, and in regard to interacting with supervisors, co-workers and the public. *Id.* Finally, he found moderate limitations in regard to the use of good judgment and responses to changes in the workplace. *Id.* He assessed a GAF score of 55.[2] *Id.*

The nurse practitioner, Dawn Howley, saw Ditsworth on September 9, 2011, and found that she met the diagnostic criteria for major depression. AR 695-98. Nurse Howley assessed a GAF score of 49[3], suggesting serious symptoms or impairments, and recommended psychotherapy. AR 698. The ALJ determined that the opinions of both Dr. Morton and Nurse Howley were entitled to only little weight. AR 18. He noted that both were consultative examiners who did not have established relationships with Ditsworth. *Id.* He then found that their opinions were not consistent with the medical evidence, pointing out (a) that Ditsworth had never required ongoing counseling or therapy and (b) that her primary care physician indicted that her symptoms improved with medication. *Id.* Further, the ALJ expressed reservations about the fact that Ditsworth saw Nurse Howley through an attorney referral in an "effort to generate evidence," not in an attempt to seek treatment. *Id.*

Because he gave little weight to these opinions, the ALJ included no mental limitations in Ditsworth's RFC except to state that Ditsworth "is limited to working at no

---

[2] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM-IV). A GAF score of 51-60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). *Id.*

[3] A GAF score of 41-50 indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job, cannot work). *See* DSM-IV at 34.

more than a regular pace." *Id.* Having determined Ditsworth's RFC, the ALJ then found that she is unable to perform her past relevant work. AR 18-19. At Step Five, however, the ALJ found that Ditsworth is able to perform jobs that exist in significant numbers in the national economy. AR 19. Relying on the VE's response to hypothetical questions, the ALJ found that Ditsworth could perform such sedentary jobs as addressor, final assembler and charge account clerk. *Id.* As such, he found that she is not disabled within the meaning of the Act. AR 20.

### The Substantial Evidence Standard

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and

12

give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### *Discussion*

In contending that the ALJ's decision is not supported by substantial evidence in the record as a whole, Ditsworth raises two arguments: (1) the medical evidence shows that she meets the Act's definition of "disability" and (2) the hypothetical questions

presented to the VE were improper because Ditsworth's impairments would cause more than two absences per month. Doc. No. 12 at 9-11. Ditsworth does not specifically challenge the ALJ's assessment of her credibility or his weighing of medical opinions. However, because the issues she has raised imply disagreement with those findings, I will discuss them before considering her arguments.

## I.    Did The ALJ Properly Analyze Ditsworth's Credibility?

The standard for evaluating the credibility of a claimant's subjective complaints is set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ must consider the claimant's daily activities; duration, frequency and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. *Polaski*, 739 F.2d at 1322. The claimant's work history and the absence of objective medical evidence to support the claimant's complaints are also relevant. *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000). The ALJ does not need to explicitly discuss each factor as long as he or she acknowledges and considers the factors before discrediting the claimant's subjective complaints. *Goff*, 421 F.3d at 791. "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

The ALJ acknowledged the *Polaski* factors by citing the relevant regulations and Social Security Ruling 96-7p. AR 13. He found Ditsworth was not a credible witness to the extent that she alleged disability and the inability to perform all work activity. AR 14. He provided several reasons for this determination. First, he found that the medical evidence of record does not support Ditsworth's claims concerning the severity

14

and effect of her symptoms.   AR 14-15.   Second, he concluded that her statements to doctors concerning her pain were inconsistent at times.   AR 15.   Third, he noted that Ditsworth's treatment history and her use of medications were not consistent with her allegation of disability.   *Id.*   For example, the records indicate she did not want to take prescription medication and, at the time of the hearing, was taking no medication for pain.   *Id.*

Fourth, the ALJ found that Ditsworth's work record did not support her allegations.   *Id.*   While claiming to have been disabled starting February 11, 2008, she had reported earnings until the second quarter of 2009.   *Id.*   She then took a full-time job for several weeks beginning in September 2009 and, later, began working three days per week at her father's used car lot.   *Id.*   Moreover, she applied for numerous jobs after her alleged onset date that would have required significant standing and walking.   AR 16.

Fifth, the ALJ found that Ditsworth's own report of her daily activities was inconsistent with her claim of disability.   She indicated that she cares for herself and her young daughter, vacuums and cleans the house weekly, drives, shops and handles her own finances.   *Id.*   She also spends time with others and talks to friends and family on the phone.   *Id.*

Based on my review of the entire record, I find that the ALJ applied the proper legal standard to assess Ditsworth's credibility and that his stated reasons are supported by substantial evidence.   As such, I must defer to the ALJ's determination.   The ALJ did not err in finding that Ditsworth's statements as to the severity and effects of her symptoms are not entirely credible.

## II.     *Did The ALJ Properly Weigh The Medical Opinion Evidence?*

### A.     *Treating Physicians*

The ALJ gave controlling weight to the opinion of one of Ditsworth's treating physicians, Dr. Coetzee, who found in August 2010 that Ditsworth was capable of performing sedentary work for 30-40 hours per week so long as she could limit her walking to 15 minutes at a time.    AR 16, 588-89.    By contrast, the ALJ gave little or no weight to the opinion of another treating physician, Dr. Bertheleson, primarily because Dr. Bertheleson's opinion was not a "medical" opinion.    Instead, Dr. Bertheleson opined that Ditsworth could perform a "sitting" job but for her lack of education and training.    AR 467.

A treating physician's opinion is given "controlling weight" as long as it is "well–supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."    20 C.F.R. §§ 404.1527(c)(2),   416.927(c)(2).    A treating physician's opinion is generally entitled to "substantial weight," but such an opinion does not "automatically control" because the ALJ must evaluate the record as a whole.    *Wilson v. Apfel*, 172 F.3d 539, 542 (8th Cir. 1999).    "It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record."    *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000).    "Moreover, an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence."    *Id.* at 1014 (internal quotations and citations omitted).    "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation."    *Id.* at 1013 (quoting 20 C.F.R. § 404.1527(c)(2)).

16

When a treating physician's opinion is entitled to controlling weight, the ALJ must defer to the physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005). However, a treating physician's conclusion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis*, 392 F.3d at 994.

With these standards in mind, I conclude that the ALJ did not err in his evaluation of opinions provided by treating physicians. With regard to Dr. Coetzee, the ALJ found that his opinion concerning Ditsworth's capabilities was supported by the evidence of record and by Dr. Coetzee's familiarity with Ditsworth as a treating physician. AR 16. This finding is supported by substantial evidence in the record as a whole.

As for Dr. Bertheleson, his opinion that Ditsworth lacked the education and training to perform a "sitting" job is not a medical opinion, as it did not address the nature and severity of Ditsworth's impairments, including symptoms, diagnosis and prognosis, what she is capable of doing despite the impairment, and the resulting restrictions. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *see also Ellis*, 392 F.3d at 995. Instead, it was an opinion concerning her *employability*. In other words, Dr. Bertheleson opined that Ditsworth, while capable of performing sedentary work, was unlikely to be hired for such work because of her vocational profile. I agree with the ALJ that this was not a "medical" opinion within the meaning of the Commissioner's regulations and, therefore, was not entitled to controlling weight.

The ALJ's assessment of the treating physicians' opinions is consistent with the applicable legal principles and is supported by substantial evidence in the record. The

17

ALJ did not err in giving controlling weight to Dr. Coetzee's opinion while rejecting Dr. Bertheleson's opinion on grounds that it was not a medical opinion.

## B.     Other Sources

The ALJ also considered medical opinions from other sources as to Ditsworth's physical and mental impairments.   With regard to physical impairments, he noted that three different state agency consulting physicians had reviewed Ditsworth's records and concluded that she could perform a reduced range of light work.   AR 16.   He elected to give those opinions some weight, but ultimately found that the opinion of Dr. Coetzee, a treating source, was controlling.   *Id.*

As for mental impairments, opinions were provided by a consultative examining psychologist (Dr. Morton) and a consultative examining nurse practitioner (Dawn Howley).   The ALJ gave only little weight to these opinions and provided reasons for this determination.   AR 18.   First, he noted that both examiners were one-time consultative examiners who had no established relationship with Ditsworth.   *Id.*   This is a valid reason for failing to fully credit an opinion concerning mental impairments. *See, e.g., Loving v. Dept. of Health and Human Servs.*, 16 F.3d 967, 971 (8th Cir. 1994) ("a one-time evaluation by a nontreating psychologist is of little significance by itself") (citing *Browning v. Sullivan*, 958 F.2d 817, 823 (8th Cir. 1992)).

Next, the ALJ found that the opinions of these consultative examiners were not consistent with the medical evidence.   AR 18.   For example, he contrasted their opinions with evidence that Ditsworth's mental impairments were never so serious as to require ongoing counseling or therapy.   *Id.*   Finally, with regard to Nurse Howley, the ALJ found it relevant that Ditsworth was referred by her attorney for the examination in "an effort to generate evidence for the current appeal."   *Id.*

18

The ALJ is not bound by the findings of state agency or other program physicians and psychologists, but he or she "may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6P, 1996 WL 374180 (July 2, 1996). The ALJ complied with this requirement by providing reasons for the weight he chose to assign to various opinions provided by nontreating sources. I find that these reasons are supported by substantial evidence in the record. The ALJ did not err in weighing the medical opinions.

### III. Did The ALJ Properly Apply The Act's Definition Of "Disability"?

In her brief, Ditsworth relies primarily on the Act's definition of "disability":

(1) The term "disability" means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

42 U.S.C. § 423(d)(1)(A). She notes that she injured her ankle in February 2008 and was restricted by her physicians from returning to work from the date of her injury through December 2009. She also notes that she was then diagnosed with cancer in 2010 and underwent approximately six months of intensive treatment. As such, she argues that she was under a "disability" because she was unable to engage in substantial gainful work activity for more than twelve continuous months prior to her hearing. Doc. No. 12 at 10.

In response, the Commissioner makes the seemingly-obvious point that there is a significant difference between being unable to perform *a particular* job and being unable to perform *any* job. The fact that Ditsworth's physicians told her not to return to work

as a nurse's aide (a position precluded by her RFC[4]) does not necessarily mean she was unable "to engage in any substantial gainful activity" for a continuous period of twelve months or more. Instead, a claimant has a disability when he or she is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Ditsworth ignores this basic distinction in arguing that a series of doctors' notes restricting her from returning to work as a nurse's aide automatically established a "disability" under the Act. I find that the ALJ properly interpreted the word "disability" in considering Ditsworth's claims for DIB and SSI and that he properly conducted the five-step disability analysis to determine whether her impairments met that definition. The ALJ did not err in finding that Ditsworth was not under a disability within the meaning of the Act.

### IV.    Were The ALJ's Hypothetical Questions Improper?

Finally, Ditsworth argues that the ALJ understated the severity of her impairments in formulating hypothetical questions to the VE. In particular, she contends that the evidence shows she would have missed far more than two days per month of work if she had attempted to work at a sedentary job between February 11, 2008, and the date of the hearing. Doc. No. 12 at 10.

When a hypothetical question fails to include all relevant impairments, the VE's answer to that question does not constitute substantial evidence. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). By contrast, "[a] vocational expert's testimony

---

[4] The VE testified that a hypothetical person with the limitations included in Ditsworth's RFC could not perform the position of nurse's aide. AR 58-59.

constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Buckner v. Astrue*, 646 F.3d 549, 560-61 (8th Cir. 2011) (quoting *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010)). "[A]n ALJ may omit alleged impairments from a hypothetical question posed to a vocational expert when [t]here is no medical evidence that these conditions impose any restrictions on [the claimant's] functional capabilities or when the record does not support the claimant's contention that his impairments significantly restricted his ability to perform gainful employment." *Buckner*, 646 F.3d at 561 (quoting *Owen v. Astrue*, 551 F.3d 792, 801-02 (8th Cir. 2008) (internal quotations omitted)).

Here, the ALJ asked the VE hypothetical questions that incorporated the same limitations the ALJ included in his RFC finding. AR 13, 58-60. As noted above, the ALJ made the RFC finding based on his assessment of Ditsworth's credibility and the weight he assigned to the various medical opinions. I have already found that the ALJ's findings are supported by substantial evidence in the record. Moreover, I note that Ditsworth's argument again confuses her ability to perform the job of nurse's aide with her ability to perform work of any kind. While it is clear that her impairments made it impossible for her to continue to work as a nurse's aide, there is no evidence that she would have regularly required more than two absences per month if employed in a sedentary job. As such, I reject Ditsworth's argument that the ALJ's hypothetical questions to the VE failed to account for all of her proven impairments.

## CONCLUSION

After a thorough review of the entire record and in accordance with the standard of review I must follow, I conclude that the ALJ's determination that Ditsworth was not

disabled within the meaning of the Act is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is **affirmed**.   Judgment shall be entered in favor of the Commissioner and against Ditsworth.

**IT IS SO ORDERED.**

**DATED** this 12th day of November, 2013.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE

22